# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RAMON SANTIAGO HERNANDEZ,**<br><br>　　Plaintiff,<br><br>　　v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　Defendant. | Civ. No. 19-18528 (KM)<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

　　Plaintiff Ramon Santiago Hernandez brings this action pursuant to 42 U.S.C. § 1383(c)(3) to review a final decision of the Commissioner of Social Security, denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381. Santiago Hernandez seeks to reverse the finding of the Administrative Law Judge ("ALJ") that he has not met the Social Security Act's definition of disabled as of August 11, 2011, the alleged onset date.

　　The question is whether the ALJ's decision is supported by substantial evidence. Specifically, Santiago Hernandez contends that (1) the evidence does not support the ALJ's finding that Santiago Hernandez had no exertional limitations; (2) the ALJ failed to address Santiago Hernandez's attendance in a partial hospitalization program; and (3) the ALJ should have addressed multiple forms of consistent opinion evidence.

　　For the reasons stated below, the decision of the ALJ is **REVERSED** and **REMANDED**.

I. **BACKGROUND**[1]

Plaintiff Ramon Santiago Hernandez claims a variety of disabling physical and psychological ailments. These include schizophrenic disorder, which is characterized by nervousness, panic attacks, and hallucinations; memory impairment; and "nightmares, depression, [and] bad thoughts." (DE 8 at 5). There is evidence of a childhood marked by trauma and abuse, leading to inability to function well in large groups of people, nervousness and panic attacks. He also relates a series of physical assaults he suffered while serving in prison. After a car accident in 2011, Santiago Hernandez has also had problems with his back and shoulders.

A. **Procedural History**

On April 16, 2015, Santiago Hernandez applied for SSI benefits, alleging an onset date of August 8, 2011. His claim was initially denied on August 21, 2015, and his motion to reconsider was denied on July 19, 2016. On August 17, 2016, Santiago Hernandez requested a hearing, which was held on May 31, 2018. (ALJ 1). Administrative Law Judge Dennis O'Leary rendered a decision on August 8, 2018, finding that Santiago Hernandez was not disabled. (ALJ 18). On August 7, 2019, the Appeals Council denied Santiago Hernandez's request for review.

1. **Santiago Hernandez's Physical Condition**

In February 2014, lumbar x-rays revealed that Santiago Hernandez's spine had undergone mildly degenerative changes. (Ex. 7).

In the spring of 2015, Santiago Hernandez was admitted to East Orange General Hospital, where Dr. Joan Kowalle, a rheumatologist, diagnosed him with chronic lower back pain, elevated rheumatoid factor, mild osteoarthritis, and chronic back pain. (Ex. 7).

---

[1] "DE __" refers to the docket entry numbers in this case. "Ex. __" refers to the exhibit numbers of the administrative proceeding, which are located at DE 5. "ALJ" refers to the decision of the administrative law judge, which is located at DE 5-2.

On June 30, 2015, Dr. Jose Bustillo, an internist at East Orange General Hospital, noted that Hernandez Santiago had a limited range of motion with abduction and adduction, external rotation, and internal rotation. Dr. Bustillo diagnosed him with chronic pain of both shoulders, obesity, and a partial rotator cuff tear. (Ex. 18).

In September 2015, Santiago Hernandez complained of hand pain to neurologist Dr. Nizar Souayah, but the examination yielded no results. Follow-up x-rays in March 2016 also yielded no results. (Ex. 9).

On March 11, 2016, Dr. Marc Weber of Essex Diagnostic Group performed a consultative examination on and found that Santiago Hernandez had "chronic diffuse pain of unclear etiology" and noted a "history of generalized osteoarthritis." Dr. Weber speculated that the "situation may reflect fibromyalgia as well." Dr. Weber ordered a lumbar MRI, which revealed only slight hypertrophy. The same day, Dr. Stephen Toder, also of Essex Diagnostic Group, noted that frontal and lateral views of Santiago Hernandez's lumbar spine showed a "very mild levoscoliotic curvature." (Ex. 15).

On September 9, 2016, practitioners at Premier Orthopaedics and Sports Medicine noted that the range of motion in Santiago Hernandez's shoulders was severely limited, and they diagnosed him with frozen-shoulder syndrome. (Ex. 19).

In November 2016, Santiago Hernandez reported to Dr. Bustillo that physical therapy had at least temporarily relieved his shoulder pain. A follow-up examination revealed that he had limited upper extremity motion but retained full strength. In October 2017, Dr. Bustillo reported that Santiago Hernandez's rotator cuff tear was asymptomatic and that he had no limitations in movement. (Ex 18).

### 2. Santiago Hernandez's Psychological Condition

On July 17, 2015, Dr. Kim Arrington performed a consultative exam, noting that Santiago Hernandez had borderline to low-average intelligence and that, due to mood fluctuations, his judgment ranged from fair to poor. Dr.

Arrington predicted that Santiago Hernandez would have "difficulty performing simple tasks due to low motivation" and that he would struggle "learning new tasks and performing complex tasks due to problems with motivation and poor memory." She also observed that he would "have difficulty maintaining a regular schedule due to hypervigilance." Dr. Arrington diagnosed Santiago Hernandez with PTSD and noted that he would "need support managing funds due to self-reported difficulty with money management." She also concluded that Santiago Hernandez could follow and understand simple directions and instructions, would have difficulty performing simple tasks due to low motivation, would be able to maintain attention and concentration but would struggle to learn new tasks and perform complex tasks, and would have difficulty maintaining a regular schedule. His difficulties, she opined, appeared to be attributable to mood fluctuations and anxiety. (Ex. 6).

In September 2015, Dr. Erin Zerbo, a psychiatrist at University Hospital in Newark, New Jersey, noted that Santiago Hernandez had auditory hallucinations, forgetfulness, and a history of panic attacks. She believed that he was "mentally disabled and []not able to work." She diagnosed him with schizoaffective disorder, major depressive disorder, PTSD, and delirium. (Ex. 9).

On February 2, 2016, Linda Gable-Gaston, an advanced nurse practitioner at East Orange General Hospital, noted that Santiago Hernandez had adjustment disorder, PTSD, and schizoaffective disorder and suggested that these diagnoses would limit his ability to participate in gainful employment or occupational training. Gable-Gaston found that Santiago Hernandez had psychomotor retardation, could not stand, and had severe psychiatric symptoms. An MRI suggested that he might have Burford complex. (Ex. 11).

On March 7, 2016, Dr. Ronald Silikovitz performed a consultative exam and noted that Santiago Hernandez could not identify the day, date, month, year, or the current president or governor. Santiago Hernandez could not spell "world" backwards, could not repeat a two-digit sequence backwards or complete a "serial seven task." Santiago Hernandez also laughed at

4

inappropriate times during the examination and had difficulty maintaining eye contact. Dr. Silikovitz diagnosed him with paranoid schizophrenia, hallucinations, mixed anxiety, severe depressions, and PTSD, and stated that he was not capable of managing his own funds. (Ex. 14).

On April 18, 2016, Hernandez Santiago was admitted to New Essecare of New Jersey ("Essecare") in Orange, New Jersey and began attending a partial hospitalization program several times a week. (Ex. 22).

On May 18, 2018, Cecilia Horner, a licensed social worker, noted that Santiago Hernandez had been diagnosed with schizoaffective disorder and PTSD. Homer opined that clients with these diagnoses might have problems functioning well in the workplace. Horner also noted that Santiago Hernandez did not have a substantial work history and had never held a job for more than a few months. (Ex. 23).

In April 2019, Hernandez Santiago was admitted to the emergency department at University Hospital in Newark, due to paranoia and self-harm. Doctors determined that he had PTSD, schizophrenia, and insomnia. (Ex. 20).

### B. The ALJ's Decision

Judge O'Leary reviewed the administrative record and found that:

1. Santiago Hernandez had not engaged in substantial gainful activity since April 16, 2015, the date he filed his application; (ALJ 10)
2. Santiago Hernandez had the following severe impairments: organic mental disorder; affective disorders; schizoaffective disorder; anxiety; PTSD; and a partial bilateral shoulder cuff tear; and that the back disorder was a "non-severe" impairment; (ALJ 10)
3. Santiago Hernandez did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, App. 1; (ALJ 10–12)
4. Santiago had the following residual function capacity: no exertional limitations and could therefore perform heavy work but could not

    frequently lift his arms bilaterally over his head and was limited to jobs of a simple and repetitive nature, due to a reduced ability to concentrate and focus; and that he was limited to jobs with no direct contact with the public and minimal contact with coworkers and supervisor; that Santiago Hernandez could perform his past relevant work as a warehouse worker and hand packager and that these jobs do not require the performance of work-related activities precluded by his residual functional capacity; (ALJ 12–18) and that

5. Santiago Hernandez had not been under a Social Security Act-eligible disability since April 16, 2015, the date that he filed his application. (ALJ 18)

Santiago Hernandez filed the complaint in this case on September 30, 2019. (DE 1).

## II. DISCUSSION

### A. Standard of Review

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C.

§ 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder."). This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007).

In reaching a decision, an ALJ is only required to addressed relevant examinations, opinion evidence, and the claimant's complaints. *See Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) (An ALJ is only required to "indicate that s/he has considered all the evidence, both for and against the claim, and provide some explanation of why s/he has rejected probative evidence. . . . [T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.").

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000).

### B. The Social Security Act and the Five-Step Process

To qualify for SSI, a claimant must meet income and resource limitations, and show that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A). A person is deemed unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

>engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1382c(a)(3)(B).

Under the authority of the Social Security Act, the Administration has established a five-step evaluation process for determining whether a claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If yes, the claimant is not disabled. If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis). If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past

8

relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If yes, the claimant is not disabled. If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

### C. Analysis

Santiago Hernandez identifies three issues in the ALJ's decision that he alleges constitute reversible error. He argues that (1) the evidence does not support the ALJ's finding that he had no exertional limitations; (2) the ALJ failed to address his attendance in a partial hospitalization program; and (3) the ALJ should have addressed multiple forms of consistent opinion evidence. (DE 8 at 17–24).

#### 1. Finding of no exertional limitations

Santiago Hernandez alleges that the ALJ did not effectively or qualitatively consider his osteoarthritis and that this caused the ALJ to mis-designate his exertional limitations. (DE 8 at 17–19).

Santiago Hernandez bears the burden of proving that he does not have the residual functional capacity to perform substantial gainful activity. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.945(a)(3); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his medical condition, to do so."); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) ("The claimant bears the ultimate burden of establishing steps one through four.") (citing *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004)).

Santiago Hernandez did not meet that burden at the hearing, and the ALJ determined that his residual function capacity allowed him to perform jobs available in the national economy. *See* 20 C.F.R. § 416.927(d)(2); *see also*

*Chandler v. Comm'r Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and residual functional capacity determinations."). At the hearing, the ALJ made finding based on the relevant evidence, which included medical records, medical source opinions, and Santiago Hernandez's allegations and description of his limitations. *See* 20 C.F.R. §§ 416.945(a), 416.946(c).

The ALJ's written decision contains a detailed summary of the evidence related to Santiago Hernandez's osteoarthritis and the conditions associated with that limitation. Specifically, the decision references hospital visits and other treatments that occurred in February 2014; April, May, June, and September 2015; March, April, June, September, and November 2016; and October 2017. In addition, the ALJ discussed the following physical symptoms and conditions: bilateral hand osteoarthritis; back pain with radiation to the left lower extremity; numbness of the fingers; severe lower back and left leg pain; left hand joint and wrist pain with tingling; chronic back pain; numbness in the left arm and left lower abdomen; joint pain and arm numbness; chronic diffuse pains of unclear etiology and notation; levoscoliosis and mild degenerative lumbar spine changes; and bilateral shoulder partial cuff tear. The ALJ's decision also acknowledged and considered the following procedures that practitioners had performed to diagnose Santiago Hernandez's conditions: lumbar x-rays; lumbar spine MRI; and electrodiagnostic testing. The ALJ also acknowledged an October 2017 report, in which Santiago Hernandez's treating physician reported that the shoulder issues were asymptomatic and did not limit his movements.

In a thorough analysis, the ALJ considered the evidence and determined that Santiago Hernandez's partial cuff tear was severe, but he also reasoned that Santiago Hernandez's back conditions were non-severe and did not limit his ability to perform basic work activities. The ALJ's reasoned decision relied upon substantial evidence to support his conclusions. The Social Security Act imposes a deferential standard of review with respect to the ALJ's factual

10

findings, and there is no evidence that the ALJ overlooked or disregarded any crucial evidence. Accordingly, the ALJ's finding that Santiago Hernandez's osteoarthritis did not fully disable him is not grounds for remand.

### 2. Attendance at partial hospitalization program

Santiago Hernandez faults the ALJ for failing to consider that he attended a partial hospitalization program at Essecare. (DE 8 at 18). Santiago Hernandez alleges that the effect of this hospitalization program was work-preclusive and that the ALJ's rejection of this argument constitutes harmful error. (DE 8 at 19).

To the contrary, the ALJ considered Santiago Hernandez's partial hospitalization program and rejected its effect when he made findings of fact. The ALJ acknowledged that Santiago Hernandez has psychiatric issues, which the program helped to ameliorate, but he also noted (1) that the program was a condition of Santiago Hernandez's lifetime parole and (2) that Santiago Hernandez visited the facility more often than he was required to.

Further evidence that the ALJ considered Santiago Hernandez's attendance at Essecare is the fact that the ALJ cited the Essecare records as substantive evidence. The ALJ noted that according to Essecare, Santiago Hernandez interacted with other patients, made plans for the future, and expressed interest in work opportunities. The ALJ used this evidence to determine that Santiago Hernandez retained some residual functional capacity, namely, to do "simple, repetitive work, with no direct public contact and minimal contact with coworkers and supervisors."

Santiago Hernandez challenges the interpretation of the ALJ and of the Commissioner:

> First, [the Commissioner] highlight[s] that the Plaintiff's attendance of the partial hospitalization program is a condition of his parole. This does nothing to acknowledge whether the program is work-preclusive beyond further attempting to highlight Plaintiff's previous incarceration (discussed further below). Irrespective of whether or not the program is a condition of his parole, Plaintiff is in attendance from 9 AM to 2:45 PM three to five days a week.

11

> Even when reduced to the minimum weekly time allowed through his parole, three days a week at the above mentioned hours is clearly still work-preclusive, as this would require him to be called out of full-time work at least 12 times per month. The VE testified that missing three or more days of work per month or would be work-preclusive. Additionally, at no point did the ALJ address what impact, if any, the claimant's partial hospitalization program would have on in ability to perform work during certain work shifts, such as day or night. Therefore, the Vocational Expert was not asked, nor did they testify about any possible erosion the jobs cited would have due to the Plaintiff's inability to work day shifts versus night shifts. *Limitations which prevent Plaintiff from working a full workday constitutes a disability within the meaning of the act.*

(DE 12 at 2–3 (citing *Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980); *Kangas v. Bowen*, 823 F.2d 775 (3d Cir. 1987) (emphasis added) (citations to record omitted)).

However, the law does not sweep as broadly as Santiago Hernandez would have it. Many applicants might have competing obligations or scheduling conflicts, even unavoidable ones, that would interfere with regular employment. Neither *Johnson* nor *Kangas,* however, equates an *obligation,* even a court-imposed one, with a *disability* within the meaning of the Social Security Act. In *Johnson,* the plaintiff's physical capabilities—not a court-mandated treatment program as such—limited his ability to work a full day:

> Johnson has submitted additional evidence on appeal which he claims supports his position. This is a medical examination report by Johnson's treating physician dated March 13, 1978, and a May 24, 1979, statement by that physician stating that Johnson's condition limits his productive activity to four hours a day. Moreover, this physician does not expect Johnson's condition to improve. It has been held that *a physical limitation which prevents a claimant from working a full work-day, minus a reasonable time for lunch and breaks, constitutes a disability within the meaning of the Act.*

*Johnson,* 612 F.2d at 998 (emphasis added). The court in *Johnson* clearly stated that a *physical* limitation that prevents an individual from working is a

disability within the meaning of the Social Security Act. Santiago Hernandez's reliance on *Johnson* is therefore inapt.

Similarly, in *Kangas*, the plaintiff had a lung disease that prevented him from continuing to work at the machine shop and foundry where he had been employed. 823 F.2d at 776. The plaintiff's lung disease required frequent and unpredictable hospitalizations, each of which was followed by a significant recovery period, during which he was physically unable to work:

> Before the Secretary was evidence that Kangas had been hospitalized six times in a sixteen-month period for problems with his lungs. The medical advisor, in uncontroverted testimony, stated that Kangas "has had frequent lung infections requiring hospitalization, sometimes every two to three months." Each hospitalization requires a subsequent one to two week recovery period at home. Despite this evidence, the Secretary found that Kangas could engage in substantial gainful activity because there was a wide range of sedentary work that he could perform.
>
> We believe that the Secretary failed to consider Kangas' frequent need for hospitalization in his finding that Kangas was not disabled because he could engage in substantial gainful activity. Although the medical advisor testified that Kangas was capable of performing work activity when he was not suffering an exacerbation, "sporadic or transitory activity does not disprove disability."

*Kangas*, 823 F.2d at 777–78 (citations omitted) (footnote omitted). *Johnson* and *Kangas* demonstrate that a limitation that prevents a claimant from working a full workday constitutes a disability within the meaning of the Social Security Act if the limitation is a physical one and occurs sporadically. Here, Santiago Hernandez's limitation satisfied neither criterion. To be sure, he had *some* physical limitations, but the ALJ addressed those by noting Santiago Hernandez's residual functional capacity. However, as the ALJ found, Santiago Hernandez's physical limitations alone did not prevent him from working a full day. Moreover, Santiago Hernandez's partial hospitalization obligations were not sporadic and unpredictable; to the contrary, they were clearly scheduled with discrete beginning and end times. The ALJ considered this evidence and

acted within his discretion when he found that Santiago Hernandez's attendance at the partial hospitalization program did not affect his physical or mental limitations beyond that which the finding of residual functional capacity had already established.

### 3. Consistent opinion evidence

Finally, Santiago Hernandez alleges that the ALJ improperly gave little weight to the opinions of Gable-Gaston, Horner, and Drs. Zerbo and Silikovitz. (DE 8 at 21–22). Santiago Hernandez points in particular to the following evidence:

- Dr. Zerbo, Santiago Hernandez's treating physician, wrote "[w]e believe [Santiago Hernandez] is mentally disabled and is not able to work."
- Dr. Silikovitz, Santiago Hernandez's consultative examiner, noted that Santiago Hernandez could not identify the day, date, month, or year and did not know who the current president or governor was.
- Gable-Gaston opined that Santiago Hernandez had PTSD, schizoaffective disorder, and adjustment disorder.
- Horner noted that "clients with [Santiago Hernandez's] diagnoses may have problems functioning well in the workplace."

When an ALJ considers medical evidence, the opinion of a medical professional who has treated the claimant is generally entitled to deference. 20 CFR §§ 404.1527(c)(2) & 416.927(c)(2 ) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)"). But the opinion of a treating source must be given "controlling weight" only when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* The Third Circuit has held that unless there is contradictory

medical evidence in the record, an ALJ may not reject a treating physician's opinion. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008). An ALJ's unsupported judgment, speculation, or lay opinion is not sufficient to outweigh a treating physician's opinion. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

If the opinion of a treating physician, in particular, is not accorded controlling weight, the ALJ must justify that finding in light of the factors for weighing medical opinions which are set forth in 20 CFR §§ 404.1527 & 416.927. *See* 20 CFR §§ 404.1527(c)(1–6), 416.927(c)(1–6) (ALJ must consider: (i) the examining relationship between the claimant and the doctor; (ii) the treatment relationship between the claimant and the doctor; (iii) the extent to which the opinion is supported by relevant evidence; (iv) the extent to which the opinion is consistent with the record as a whole; and (v) whether the doctor providing the opinion is a specialist). Although "contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded more or less weight depending on the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted).

Two of the relevant opinions were rendered by Gable-Gaston, an advanced nurse practitioner, and Horner, a social worker. (*See* p. 4, *supra.*) The ALJ permissibly reasoned that these opinions of non-physicians were entitled to less weight than those of the doctors. *See* 20 C.F.R. § 416.913(d)(1). Moreover, the ALJ noted that the opinions of both were equivocal in some respects. Gable-Gaston noted that Santiago Hernandez's partial hospitalization program would disable him only through February 2017. Similarly, Horner suggested, but did not conclusively aver, that Santiago Hernandez might have problems holding down a job.

The real difficulty lies in the ALJ's treatment of the diagnoses of the physicians, which were fairly consistent across the board. The most benign was that of Dr. Arrington, who diagnosed Santiago Hernandez with PTSD, and

15

noted that this would limit (though perhaps not preclude) work activities. Dr. Zerbo, a psychiatrist, diagnosed him with schizoaffective disorder, major depressive disorder, PTSD, and delirium, and opined that he would not be able to work. Dr. Silikovitz diagnosed him with paranoid schizophrenia, hallucinations, mixed anxiety, severe depressions, and PTSD. Dr. Silikovitz noted that Santiago Hernandez failed some basic tests of mental functioning, such as reversing a two-digit sequence, naming the current president, or stating today's date. In an April 2019 emergency room visit, doctors diagnosed Santiago Hernandez with PTSD, schizophrenia, and insomnia.

The ALJ assigned minimal weight to Dr. Zerbo's notes, because the record also showed that Santiago Hernandez was able to function in society by interacting with and helping others and by using public transportation without supervision. The syndromes described by Dr. Zerbo and others, however, are not inconsistent with, *e.g.*, taking public transportation or episodic social interactions.

The ALJ discounted Dr. Silikovitz's account of Santiago Hernandez's limitations. The ALJ considered Santiago Hernandez's behavior in the examination "to be a pretty obvious example of simulating mental illness." (ALJ at 34). Frankly, as a medical lay person I share the ALJ's skepticism of the claimant's sudden inability to perform the most rudimentary mental tasks. But it is not our opinion that counts. One of the professional skills of a psychiatrist is the identification of malingering and assessment of its psychological significance. There is no *medical* opinion of malingering in this record; in so finding, the ALJ was not sifting the medical opinions, but in effect rendering his own medical opinion based on the same evidence that was before the doctor.[2]

---

[2] This was not, by the way, a credibility determination based on the claimant's testimony at the hearing. The ALJ explicitly based his determination on what he read in the doctor's notes and reached a medical conclusion that diverged from that of the doctor.

16

In most respects, I would uphold the ALJ's decision. As to his weighing of the opinions of the doctors, however, I think further development is required. The reasons given did not furnish a sufficient basis for discounting a fairly consistent battery of medical opinions. I do not mean to dictate a result. On remand, the ALJ may proceed as he sees fit; he may obtain additional medical evidence, or simply reweigh the evidence of record, giving more explicit and valid reasons for crediting or not crediting it.

### III. CONCLUSION.

Accordingly, the decision of the ALJ is **REVERSED** and the matter is **REMANDED** for further proceedings consistent with this opinion.

A separate order will issue.

Dated: September 2, 2020

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**